UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 24-11964

---

ALPINE PARTNERS (BVI) LP,

*Petitioner-Appellee,*

V.

MARK GUINAN,

*Respondent-Appellant.*

---

**BRIEF FOR RESPONDENT-APPELLANT**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

---

David B. Weinstein
Brian C. Porter
GREENBERG TRAURIG, P.A.
101 E. Kennedy Blvd., Ste. 1900
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900

Brigid F. Cech Samole
GREENBERG TRAURIG, P.A.
333 S.E. Second Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500

David Livshiz
Brandt Henslee
FRESHFIELDS BRUCKHAUS DERINGER
US LLP
175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: (212) 277-4000

Jacob Johnston
FRESHFIELDS BRUCKHAUS DERINGER
US LLP
700 13th Street, NW, 10th Floor
Washington, DC, 20005
Telephone: (202) 777-4554

*Counsel for Respondent-Appellant Mark Guinan*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In compliance with 11th Circuit Rule 26.1-1 Respondent-Appellant Mark Guinan submits this list which includes the trial judge, and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this review and includes subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held company that owns 10% or more of the party's stock:

1. Alpine Partners (BVI) L.P. (Petitioner-Appellee)

2. Alpine Global Management, LLC

3. APS Holding Corporation

4. Cech Samole, Brigid F. (Counsel for Respondent-Appellant)

5. Cembrovska, Anastasia (Counsel for Petitioner-Appellee)

6. Clemente, Katherine M. (Counsel for Respondent-Appellant)

7. Collas Crill (Attorneys for Petitioner-Appellee)

8. Davies, Mark C. (Counsel for Petitioner-Appellee)

9. Dougherty, Lawrence J. (Counsel for Petitioner-Appellee)

10. Dudek, The Honorable Kyle C. (U.S. Magistrate Judge)

11. Duncan, Delroy B. (Attorney for Petitioner-Appellee)

12. Freshfields Bruckhaus Deringer US LLP (Counsel for Respondent-Appellant)

13. Greenberg Traurig, LLP (Counsel for Respondent-Appellant)

14. Greenberg Traurig, P.A. (Counsel for Respondent-Appellant)

15. Guinan, Mark (Respondent-Appellant)

16. Henslee, Brandt (Counsel for Respondent-Appellant)

17. Johnson Pope Bokor Ruppel & Burns LLP (Counsel for Petitioner-Appellee)

18. Johnston, Jacob (Counsel for Respondent-Appellant)

19. Trott & Duncan Limited (Attorneys for Petitioner-Appellee)

20. Livshiz, David (Counsel for Respondent-Appellant)

21. Loft, Duane L. (Counsel for Petitioner-Appellee)

22. Pallas Partners (US) LLP (Counsel for Petitioner-Appellee)

23. Polster Chappell, The Honorable Sheri (U.S. District Judge)

24. Porter, Brian C. (Counsel for Respondent-Appellant)

25. Simopoulos, Brianna H. (Counsel for Petitioner-Appellee)

26. Sumitomo Pharma UK Holdings, Ltd

27. Wasty, John (Attorney for Respondent-Appellant)

28. Weinstein, David B. (Counsel for Respondent-Appellant)

Dated:  September 23, 2024

Respectfully submitted,

*/s/ David Livshiz*
David Livshiz

GREENBERG TRAURIG P.A.
David B. Weinstein
Brian C. Porter
Greenberg Traurig, P.A.
101 E. Kennedy Blvd., Ste. 1900
Tampa, Florida 33602
Telephone: (813) 318-5700
weinsteind@gtlaw.com
brian.porter@gtlaw.com

Brigid F. Cech Samole
333 S.E. Second Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Brigid.CechSamole@gtlaw.com

FRESHFIELDS BRUCKHAUS
DERINGER US LLP
David Livshiz
Brandt Henslee
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: (212) 277-4000
david.livshiz@freshfields.com
brandt.henslee@freshfields.com

Jacob Johnston
700 13th Street, NW, 10th Floor
Washington, DC, 20005
Telephone: (202) 777-4554
jacob.johnston@freshfields.com

*Counsel for Respondent-Appellant Mark Guinan*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Rule 34(a)(1) of the Federal Rules of Appellate Procedure and Rules 28-1(c) and 34-3(c) of the Eleventh Circuit Rules, Appellant requests oral argument.

This appeal presents two key issues on which there is limited Eleventh Circuit precedent. The first is whether a magistrate judge's order resolving a 28 U.S.C. § 1782 application is a dispositive ruling reviewed *de novo* or a non-dispositive ruling to be reconsidered only if clearly erroneous or contrary to law. The Eleventh Circuit has never analyzed this issue. The Court has held in unpublished, non-precedential decisions that magistrates' rulings on Section 1782 applications are non-dispositive, e.g., Rothe v. Aballi, 2021 WL 4429814, at *2 (11th Cir. Sept. 27, 2021), but other Circuits have since reached the opposite conclusion. See, e.g., CPC Pat. Techs. Pty Ltd. v. Apple, Inc., 34 F.4th 801, 807 (9th Cir. 2022); Associacao dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp., 2023 WL 3166357, at *1 (2d Cir. Mar. 28, 2023).

The second issue before the Court is the test governing the first of the four factors to be considered in ruling on a Section 1782 request under Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004), and its application to third-party witnesses in a foreign proceeding. District courts in this Circuit have rejected Section 1782 applications seeking depositions of third-party witnesses in foreign

proceedings because their testimony is already available to the foreign tribunal, <u>see, e.g.</u>, <u>In re Pinchuk</u>, 2014 WL 1745047, at \*3 (S.D. Fla. Apr. 30, 2014), but this Court has not had occasion to consider the issue.

Appellant believes oral argument on these issues will aid the Court's decision-making process and consideration of the appeal.

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE ISSUES........................................................1

INTRODUCTION .........................................................................1

STATEMENT OF THE CASE..........................................................4

I.     LEGAL BACKGROUND ........................................................4

II.    FACTUAL BACKGROUND....................................................6

     A.    The Parties to This Proceeding ..................................6

     B.    The Transaction ...................................................6

     C.    Petitioner Buys Shares and Seeks to Extract a Return Through Litigation..................................................................8

     D.    Petitioner Commences Litigation, and the Bermuda Court Orders Discovery. .................................................10

     E.    Petitioner Commences Section 1782 Actions, Including the Action Underlying this Appeal.........................................10

III.    PROCEDURAL HISTORY .................................................11

SUMMARY OF ARGUMENT ......................................................13

STANDARD OF REVIEW ..........................................................17

ARGUMENT .........................................................................17

I.     A MAGISTRATE'S ORDER ON A SECTION 1782 APPLICATION MUST BE REVIEWED *DE NOVO*..........................................17

II.    THE SECOND ORDER SHOULD BE REVERSED OR, IN THE ALTERNATIVE, REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH INTEL. ........................26

     A.    Under the First Intel Factor, Courts Must Determine Whether the Evidence Sought Is Available in The Foreign Proceeding. .................26

B. Petitioner's Application for Section 1782 Deposition Testimony Should Be Denied Under Either Test ...................................................30

 1. Mr. Guinan's Testimony Is Available in The Bermuda Proceedings. .....................................................................31

 2. Mr. Guinan is a Participant in the Bermuda Proceedings ................36

CONCLUSION .......................................................................................37

# TABLE OF CITATIONS

**Cases**                                                                **Page(s)**

In re Abubakar,
   696 F. Supp. 3d 479 (N.D. Ill. 2023)....................................................22

Aluminum Co. of Am., Badin Works v. U.S. Env't Prot. Agency,
   663 F.2d 499 (4th Cir. 1981) .............................................................24

In Matter of Application of Leret,
   51 F. Supp. 3d 66 (D.D.C. 2014).....................................17, 30, 31, 33

In re Application of Venequip, S.A. v. Caterpillar Inc.,
   83 F.4th 1048 (7th Cir. 2023) ............................................................28

BANOKA, S.a.r.l. v. Alvarez & Marsal Inc.,
   2024 WL 1242994 (S.D.N.Y. Mar. 22, 2024)....................................21

In re Clerici,
   481 F.3d 1324 (11th Cir. 2007) ....................................................15, 27

Correios v. Bank of N.Y. Mellon Corp.,
   2023 WL 3166357 (2d Cir. Mar. 28, 2023).......................................21

CPC Pat. Techs. Pty Ltd. v. Apple, Inc.,
   34 F.4th 801 (9th Cir. 2022) .........................................................18, 20

In re DNG FZE,
   2024 WL 124694 (S.D.N.Y. Jan. 11, 2024) .................................32, 36

Equal Emp. Opportunity Comm'n v. BDO USA, LLP,
   876 F.3d 690 (5th Cir. 2017) .............................................................24

First Union Mortg. Corp. v. Smith,
   229 F.3d 992 (10th Cir. 2000) ...........................................................20

Flam v. Flam,
   788 F.3d 1043 (9th Cir. 2015) ...........................................................20

| Cases | Page(s) |
|---|---|

*Frasers Grp. PLC v. Stanley*,
    95 F.4th 54 (2d Cir. 2024) ......................................................14, 15, 28

*Glock v. Glock, Inc.*,
    797 F.3d 1002 (11th Cir. 2015) ...........................................................17

*Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co.*,
    828 F.3d 1331 (11th Cir. 2016) ...........................................................26

*In re Ibiuna Credito Gestao de Recursos Ltda.*,
    2024 WL 1077559 (S.D.N.Y. Feb. 14, 2024) .....................................21

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004).........................................................................*passim*

*In re Jagodzinski*,
    2019 WL 1112389 (S.D. Fla. Jan. 15, 2019)..................................28, 33

*Jeffrey S. v. State Bd. of Educ. of State of Ga.*,
    896 F.2d 507 (11th Cir. 1990) .............................................................18

*Kearse v. Sec'y, Fla. Dep't. of Corrs.*,
    669 F.3d 1197 (11th Cir. 2011) ...........................................................26

*In re Microsoft Corp.*,
    428 F. Supp. 2d 188 (S.D.N.Y. 2006) .................................................29

*N.L.R.B. v. Durham Sch. Servs. L.P.*,
    2014 WL 7662293 (N.D. Fla. Oct. 10, 2014).....................................25

*N.L.R.B. v. Frazier*,
    966 F.2d 812 (3d Cir. 1992) ..........................................................23, 25

*N.L.R.B. v. Lear Corp. EEDS & Interiors*,
    2016 WL 3383284 (S.D. Ala. June 17, 2016) ....................................24

*N.L.R.B. v. Lear Renosol Selma Mfg. Facility*,
    2015 U.S. Dist. LEXIS 110755 (S.D. Ala. Aug. 21, 2015).........................24, 25

*In re Pinchuk*,
    2014 WL 1745047, (S.D. Fla. Apr. 30, 2014).......................... *passim*

**Cases**                                                                        **Page(s)**

Pons v. AMKE Registered Agents, LLC,
    835 F. App'x 465 (11th Cir. 2020) ......................................................19

Rothe v. Aballi,
    2021 WL 4429814 (11th Cir. Sept. 27, 2021) ...................................19

Schmitz v. Bernstein Liebhard & Lifshitz, LLP,
    376 F.3d 79 (2d Cir. 2004) ...............................................................15

SPS Corp I, Fundo de Investimento em Direitos Creditórios Não
    Padronizados v. Gen. Motors Co.,
    110 F.4th 586 (3d Cir. 2024) ...............................................15, 27, 28

United Kingdom v. United States,
    238 F.3d 1312 (11th Cir. 2001) .........................................................17

United States v. Mueller,
    930 F.2d 10 (8th Cir. 1991) ...............................................................24

Victoria, LLC v. Likhtenfeld,
    791 F. App'x 810 (11th Cir. 2019) ....................................................19

Vogel v. U.S. Office Prods. Co.,
    258 F.3d 509 (6th Cir. 2001) .............................................................20

Weber v. Finker,
    554 F.3d 1379 (11th Cir. 2009) .........................................................19

Williams v. McNeil,
    557 F.3d 1287 (11th Cir. 2009) .........................................................18

In re Zouzar Bouka; Vision Indian Ocean S.A.,
    637 F. Supp. 3d 74 (S.D.N.Y. 2022) ....................................17, 30, 31

**Statutes**

28 U.S.C. § 636 .....................................................................................*passim*

28 U.S.C. § 1782 ...................................................................................*passim*

Act of Mar. 2, 1855, ch 140, § 2, 10 Stat 630........................................4, 5

**Other Authorities**                                                           **Page(s)**

110 CONG. REC. 592 (1964) .......................................................................5

Fed. R. Civ. Pro. 72.................................................................12, 13, 17, 18

Geoffrey C. Hazard Jr. & Michele Taruffo, <u>Transnational Rules of
    Civil Procedure Rules and Commentary</u>, 30 Cornell Int'l L.J. 493
    (1997) ...............................................................................................35

H.R. REP. NO. 1052, pt. 1 (1963) .............................................................5

Hans Smit, <u>American Assistance to Litigation in Foreign and
    International Tribunals: Section 1782 of Title 28 of the U.S.C.
    Revisited</u>, 25 SYRJILC 1 (1998)....................................................5, 6

Hans Smit, <u>Recent Developments in International Litigation</u>,
    35 STXLR 215 (1994) ......................................................................5

S. REP. NO. 1580, pt. 1 (1964) .................................................................5

Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2005.1 (3d ed. 2024) ........5

Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3068.2 (3d ed. 2024) .....22

Yanbai Andrea Wang, <u>Exporting American Discovery</u>, 87 U. Chi. L.
    Rev. 2089 (2020) ............................................................................35

## STATEMENT OF JURISDICTION

Petitioner-Appellee Alpine Partners (BVI) L.P.'s application seeks evidence ostensibly for use in a foreign proceeding pursuant to 28 U.S.C. § 1782. The District Court had jurisdiction under 28 U.S.C. § 1331. On May 23, 2024, the District Court entered final judgment. Dkt. 40.[1] Respondent-Appellant Mark Guinan timely filed a notice of appeal on June 12, 2024. Dkt. 42. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether a district court must review a magistrate judge's Order on a 28 U.S.C. § 1782 application *de novo*.

2.      Whether the District Court applied the wrong standard under <u>Intel Corp. v. Advanced Micro Devices</u>, 542 U.S. 241 (2004).

3.      Whether the District Court erred in granting Petitioner-Appellee's application to depose Mr. Guinan pursuant to 28 U.S.C. § 1782 even though Mr. Guinan's testimony is available to the court overseeing the foreign proceeding.

## INTRODUCTION

The decision below is the first in the United States not involving *pro-se* litigants authorizing a Section 1782 petitioner to depose a respondent even though

---

[1] Dkt. numbers refer to the docket in <u>In re Application of Alpine Partners (BVI) L.P.</u>, No. 24-cv-00412 (SPC) (NPM).

the same testimony is available in the foreign proceeding. In so doing, the order granting Petitioner's application, Dkt. 36 (*First Order*), and the order overruling Respondent's Objection, Dkt. 40 (*Second Order*, together *Orders*), contradicted all existing authority from around the United States, including a court in this Circuit. If affirmed, the Orders' reasoning would require all third-party witnesses in foreign proceedings who reside in the United States to testify twice: once in a U.S.-style deposition, and again in compliance with the foreign jurisdiction's rules for eliciting oral testimony. There is no reason to provide one party to a foreign proceeding two bites at the cross-examination apple. Doing so provides one party to a foreign proceeding with a litigation advantage that was never the intent of, or purpose for, Section 1782.

Respondent Mark Guinan sat on the board of directors of Myovant Sciences Ltd. (*Myovant*), a publicly-traded Bermuda company acquired by Sumitomo Pharma UK Holdings, Ltd. (f.k.a. Sumitovant Biopharma Ltd.) (*Sumitomo*) in a take-private transaction in March 2023. Petitioner Alpine Partners (BVI) L.P. sued Sumitomo in Bermuda (the *Bermuda Proceedings*) seeking appraisal of shares it allegedly held in Myovant. As part of its litigation strategy, Petitioner filed numerous Section 1782 applications across the United States seeking document and deposition discovery.

Petitioner sought two categories of documents from Mr. Guinan, as well as his deposition (*Application*). Mr. Guinan opposed the Application because, *inter*

*alia*, the evidence Petitioner sought was available in the Bermuda Proceedings. Conceding the point, Petitioner withdrew its document requests. The only dispute remaining was whether testimony from Respondent—who will submit a witness statement and be cross-examined in the Bermuda Proceedings—is available in Bermuda or should instead be ordered pursuant to Section 1782.

But rather than determining whether Mr. Guinan's testimony is available in the Bermuda Proceedings, the Magistrate Judge focused instead on whether Mr. Guinan is a "participant" in the Bermuda Proceedings, First Order at 5, granting the Application because he was "unconvinced" that Mr. Guinan "can be labelled a participant in the foreign proceeding." Id. The District Judge held that the proper standard of review was clear error, Second Order at 3, and affirmed the First Order based on the Magistrate Judge's finding that Mr. Guinan is not a participant in the Bermuda Proceedings, id. at 4–6.

The District Judge erred in at least three ways. First, a magistrate judge's order on a Section 1782 application is dispositive for purposes of 28 U.S.C. § 636 (***Section 636***) and must be reviewed *de novo* by a district judge, not merely for clear error. Second, the correct standard under the first Intel factor is whether the evidence sought is available to the foreign court, not whether the Section 1782 target is a participant in the foreign proceedings. Third, applying either the correct standard under the first Intel factor or the "participant" standard used in the Orders, the

application should have been denied because Respondent is a witness in the underlying proceeding. Holding otherwise is not only contrary to the purpose of Section 1782 and nationwide authority interpreting it but would require third-party witnesses residing in the United States to testify twice: once in a U.S.-style deposition and once according to the rules of the foreign jurisdiction. Though not providing a foreign court with incremental evidence, such an approach does provide one party to a foreign proceeding with a significant tactical litigation advantage by being able to cross examine the same witness multiple times. In Intel, the Supreme Court directed district courts to consider parity and equality in deciding whether to exercise their discretion to grant Section 1782 discovery. Here, these considerations support denying the discovery of evidence that is already available to the foreign tribunal adjudicating the foreign proceeding.

For these reasons and as set forth below, Mr. Guinan respectfully requests that the Court reverse the Second Order and deny the Application or, in the alternative, reverse and remand for further proceedings.

## STATEMENT OF THE CASE

## I.    LEGAL BACKGROUND

Congress first provided for federal courts to aid in gathering evidence for foreign tribunals in 1855. See Act of Mar. 2, 1855, ch 140, § 2, 10 Stat 630. Foreign courts could request assistance via letters rogatory sent through diplomatic channels.

See id. Nearly 100 years later in 1948, Congress codified 28 U.S.C. § 1782's predecessor statute. It provided for "assistance in a proceeding pending in a foreign court," Hans Smit, Recent Developments in International Litigation, 35 STXLR 215, 231 (1994), but ten years later, Congress undertook to revise the statute to render it "more efficient, more effective, and more economical." H.R. REP. NO. 1052, pt. 1, at 2 (1963). The principal purpose of revising the statute was "to improve U.S. judicial procedures" for "obtaining evidence abroad in connection with proceedings in the United States" that would otherwise be unavailable to foreign courts. S. REP. NO. 1580, pt. 1, at 1 (1964); see also Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2005.1 (3d ed. 2024) ("The information sought under Section 1782 may not be available in the foreign jurisdiction due to either procedural restrictions or the substantive law.").

In 1964, the current version of Section 1782 was passed without objection. 110 CONG. REC. 592 (1964). The revised statute "clarif[ied] and liberalize[d] existing U.S. procedures for assisting foreign and international tribunals and litigants in obtaining oral and documentary evidence in the United States." S. REP. NO. 1580, pt. 1, at 7 (1964). In the words of Section 1782's principal drafter, Professor Hans Smit, the "evident purpose of Section 1782 is to make available to foreign and international tribunals and litigants evidence" obtainable in the United States but not otherwise available in a foreign proceeding. Hans Smit, American Assistance to

Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited, 25 SYRJILC 1, 11 (1998).

## II. FACTUAL BACKGROUND

### A. The Parties to This Proceeding

Petitioner-Appellee Alpine Partners (BVI) LP's (**Petitioner** or **Alpine**) Section 1782 application seeks evidence purportedly for use in the Bermuda Proceedings, which arose out of the purchase of all outstanding shares of Myovant by Sumitomo in March 2023 (**Transaction**).

Petitioner is a hedge fund that makes its money through "event driven" trading—*i.e.*, by investing in companies with the intention of suing them. Dkt. 30-1 (Alpine Press Release). Sumitomo is a company engaged in the development and commercialization of novel medical solutions, including medicines designed to treat cancer. Dkt. 30 (Respondent's Opposition) at 4. During the negotiations between Sumitomo and Myovant culminating in the Transaction, Myovant was represented by a committee of independent Directors, on which Mr. Guinan, the Respondent-Appellant, served (the **Special Committee**). Id. at 4–5.

### B. The Transaction

In 2019, Sumitomo acquired a 51.5% stake in Myovant, a publicly traded Bermuda-incorporated company. Dkt. 30-2 (Proxy Statement) at 23. On April 4, 2022, Sumitomo submitted a letter to Myovant expressing interest in acquiring the

remaining shares of Myovant and requesting access to conduct due diligence on the business.  Id. at 24; Dkt. 30-8 (First Wasty Decl.) ¶ 6.  The potential acquisition was subject to the Investor Rights Agreement (**IRA**) Sumitomo and Myovant entered into in 2019 to protect Myovant's minority shareholders.  Dkt. 30-2 (Proxy Statement) at 23.  Among other provisions, the IRA required any purchase proposal to be subject to the affirmative approval of a majority of the independent directors comprising Myovant's audit committee and to the approval of Myovant shareholders holding a majority of the Myovant common shares not owned by Sumitovant.  Id.

On April 28, 2022, Myovant formed the Special Committee, which consisted of three independent Directors on its Board, including Mr. Guinan.  Dkt. 30-8 (First Wasty Decl.) ¶ 7.  The Special Committee's role included (1) evaluating the fairness of any proposal from Sumitomo; (2) developing and negotiating the terms of any proposal; and (3) identifying available alternatives.  Id.  The Special Committee retained Goldman Sachs & Co. LLC (**Goldman**) as its financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP as its legal advisor.  Id.

On September 30, 2022, Sumitomo offered to purchase all remaining shares of Myovant at $22.75 per share.  Id. ¶ 8.  At the time, Myovant's shares were trading below $18 per share.  Dkt. 30-2 (Proxy Statement) at 51.  Sumitomo's initial offer was therefore a nearly 30% premium over the price at which Myovant's shares were trading, *i.e.*, the undisturbed trading price.  The Special Committee rejected this

offer.  Dkt. 30-8 (First Wasty Decl.) ¶ 8.  Over the next few weeks, Sumitomo made a series of increasing offers, but the Special Committee rejected them, too.  Id.

Finally, on October 23, 2022, Sumitomo increased its offer to $27 per share—a 50.3% premium to the undisturbed trading price.  Id. ¶ 10.  That same day, Goldman provided a fairness opinion to the Special Committee indicating that a deal price of $27 per share was fair to Myovant's minority shareholders.  Id.  After reviewing Goldman's opinion, the Special Committee unanimously approved a deal at $27 per share, and the Transaction was publicly announced.  Id.

On March 1, 2023, Myovant's shareholders voted overwhelmingly in favor of the Transaction:  97.32% of shares issued and outstanding that voted were voted in favor of the merger.  Id. ¶ 16.  More than 68% of minority shareholders voted in favor of the Transaction, and only 4% voted against it.  Id.  The merger was finalized on March 10, 2023.  Id. ¶ 17.

**C.    Petitioner Buys Shares and Seeks to Extract a Return Through Litigation.**

Alpine was not a material shareholder of Myovant before the Transaction was announced in October 2022.  Dkt. 30-5 (Alpine 2022-09-30 13-F Filing).  Between December 2022 and February 2023, Petitioner acquired 6,425,084 Myovant shares.  Compare Dkt. 30-4 (Alpine 2023-02-17 13-G Filing) with Dkt. 30-5 (Alpine 2022-12-31 13-F Filing).

It is advantageous for investors such as Alpine—whose business model is to purchase equity to bring appraisal actions—to buy into Bermuda companies. Unlike in many other jurisdictions, plaintiffs bringing appraisal actions in Bermuda courts are entitled to receive at least the purchase price of their shares. Dkt. 30-8 (First Wasty Decl.) ¶ 13. This eliminates the risk of loss to Petitioner if the shares are appraised for less than the purchase price, while still allowing for a potential windfall. Id. ¶¶ 12–13. Moreover, under Bermuda law, when a transaction closes, appraisal plaintiffs receive the purchase price even if litigation is pending. Id. The purchase price can then be used to fund a lawsuit such as the Bermuda Proceedings and ancillary proceedings such as the Section 1782 application before the Court, as well as others throughout the country. Id. ¶ 14.

Alpine purchased its shares after the Transaction was announced but before it closed. Dkt. 30 (Respondent's Opposition) at 6. During that time, Alpine did not contact Myovant management to lobby for a higher price, question the fairness of the deal, or otherwise express any dissatisfaction with the Transaction until after it closed with overwhelming shareholder support. Dkt. 30-8 (First Wasty Decl.) ¶¶ 15–16. After the Transaction closed, Alpine sued and initiated the Bermuda Proceedings. Dkt. 30 (Respondent's Opposition) at 6.

**D.     Petitioner Commences Litigation, and the Bermuda Court Orders Discovery.**

On February 27, 2023, Petitioner initiated the Bermuda Proceedings.  Dkt. 30-8 (First Wasty Decl.) ¶ 18.  As is standard in Bermuda litigation, the parties then proposed competing discovery approaches to the case.  Id. ¶ 19.  Petitioner sought broad, general discovery of all documents in Sumitomo's possession relevant to the valuation of Petitioner's shares in Myovant.  Id.  After several rounds of written submission and oral argument, and several further rounds of post-argument submission, the Bermudian Court ordered much of the discovery Petitioner requested over Sumitomo's objection.  Id. ¶ 19.

Specifically, on August 25, 2023, the Court ordered Sumitomo to produce all documents "relevant to the determination of the fair value of the Plaintiff's shares in Myovant" by late February 2024.  Id. ¶ 20.  Sumitomo's document production in Bermuda ultimately consisted of over 267,000 pages collected from 61 custodians, including Mr. Guinan.  Id. ¶ 26.  The Bermuda Proceedings are ongoing, and the Bermuda Court has ordered all fact witnesses, including Mr. Guinan, to submit witness statements containing their testimony.  Dkt. 35-3 (Second Wasty Decl.) ¶ 4.

**E.     Petitioner Commences Section 1782 Actions, Including the Action Underlying this Appeal.**

Notwithstanding the broad discovery granted by the Bermuda Court, Alpine has filed seven Section 1782 applications in five different district courts seeking

document and deposition evidence from twelve third parties, including Mr. Guinan. *In re Alpine Partners (BVI) L.P.*, No. 1:23-mc-00173 (S.D.N.Y. May 23, 2023); *In re: Application of Alpine Partners (BVI) L.P.*, No. 2:23-mc-00023 (S.D. Ohio Jun 07, 2023); *In re Alpine Partners (BVI) L.P.*, No. 1:24-mc-00011 (S.D.N.Y. Jan. 8, 2024); *Alpine Partners (BVI) L.P. v. Valente*, No. 24-mc-80011 (N.D. Cal. Jan. 19, 2024); *Alpine Partners (BVI) L.P. v. Curran*, No. 2:24-cv-00337 (D.N.J. Jan 19, 2024); *In re Application of Alpine Partners (BVI) L.P.*, No. 24-mc-00005-SPC-KCD (M.D. Fla. Jan. 19, 2024); *In re Application of Alpine Partners (BVI) L.P.*, No. 24-mc-00332 (S.D.N.Y. Jul. 19, 2024). Some of these applications are still pending, while others have already been quashed or withdrawn. *In re Alpine Partners (BVI) L.P.*, No. 1:23-mc-00173 (S.D.N.Y. May 23, 2023), ECF No. 27; *In re: Application of Alpine Partners (BVI) L.P.*, No. 2:23-mc-00023 (S.D. Ohio Jun. 07, 2023), ECF No. 27.

## III.  PROCEDURAL HISTORY

Petitioner filed the Application on January 19, 2024, seeking two categories of documents from Mr. Guinan as well as his deposition. Dkt. 2-1 (Mem. in Sup. of Application) at 4, 12–16. Mr. Guinan opposed the Application because, *inter alia*, the evidence Alpine sought was available in the Bermuda Proceedings. Dkt. 30 (Respondent's Opposition) at 12–17. Conceding the point, Alpine withdrew its document requests. Dkt. 35 (Respondent's Sur-Reply) at 1. The only dispute

remaining was whether testimony from Mr. Guinan—who will submit a witness statement and be cross-examined in the Bermuda Proceedings—is also available in Bermuda or should instead be obtained pursuant to Section 1782. Id. at 7–8.

The First Order was issued on April 15, 2024. Ignoring uniform authority to the contrary, it held that the first Intel factor weighed in favor of granting the Application because the Bermuda court does not have jurisdiction over Mr. Guinan, a third-party witness who lives in Florida, and because Mr. Guinan's assertion that he will nonetheless testify in the Bermuda Proceedings is an "unenforceable promise to appear." Dkt. 36 (First Order) at 6. The First Order does not cite any case law interpreting the first Intel factor, which it characterizes as "differentiat[ing] between participants and nonparticipants by reference to the foreign court's jurisdiction," or ruling on similar applications. Id.

Respondent timely objected. Dkt. 37 (Respondent's Objection). On May 23, 2024, the District Court overruled Respondent's objection. See Dkt. 40 (Second Order). The District Court held "that an order granting § 1782 relief is non-dispositive for purposes of Section 636 and Federal Rule of Civil Procedure 72." Id. at 2. The District Court then affirmed the Magistrate Judge's decision based on the Magistrate's findings that (i) Respondent "is a potential witness to the Bermuda Proceedings, not a participant," (ii) Respondent "is no longer affiliated with the parties to the Bermuda proceedings and is not a Bermuda resident," and is therefore

12

"outside the Bermuda Court's jurisdictional reach"; and (iii) Respondent's promise to testify "did not change the fact that his testimony ultimately 'may be unobtainable absent § 1782(a) aid.'" Id. at 4. Finally, the District Court "reviewed the matter *de novo*" and reached the same conclusion. Id. at 6. Mr. Guinan timely filed a notice of appeal on June 12, 2024. Dkt. 42.

## SUMMARY OF ARGUMENT

**I.** A magistrate judge's decision on a Section 1782 application must be reviewed *de novo*. Under Section 636 and Federal Rule of Civil Procedure 72, a magistrate's order on a non-dispositive matter may be reviewed for clear error, but a magistrate's order on a "dispositive motion" must be reviewed *de novo*. A Section 1782 application is a summary discovery proceeding. Thus, even if substantive issues remain to be decided by a foreign tribunal, a decision on a Section 1782 petition is dispositive of the case before the federal court.

The Eleventh Circuit has long held *de novo* review is essential to the constitutionality of Section 636 because it ensures that the "ultimate disposition of cases" is reserved to the judgment of an Article III judge. The Court has not yet issued a published, precedential decision containing analysis applying this standard to a magistrate's order on a Section 1782 petition, but the Second, Third, and Ninth Circuits have each held that magistrate orders on Section 1782 applications are

dispositive and therefore subject to *de novo* review. Numerous district courts throughout the country have concluded likewise.

The growing consensus on this point reflects the reality that a magistrate's decision on a Section 1782 application effectively grants or denies the ultimate relief sought in the federal case.

**II.** The District Court also misapplied the Intel standard. The District Court framed the test to be applied under Intel's first factor as "whether [Appellant] is a participant in the Bermuda proceedings," but the correct inquiry under that factor is whether evidence sought under Section 1782 is available to the foreign tribunal. Whether a Section 1782 target is a "participant" in a foreign proceeding may make it more or less likely that evidence is available to the foreign tribunal, but the correct test is whether the evidence sought was "unobtainable absent § 1782 aid." Frasers Grp. PLC v. Stanley, 95 F.4th 54, 59 (2d Cir. 2024). This is commonsense. There is no need for federal courts to intervene in a foreign proceedings to provide access to evidence already available to foreign tribunals. It is also consistent with the purpose of Section 1782, which is to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, . . . cannot [themselves] obtain." Intel, 542 U.S. at 262. Focusing on the availability of evidence to a foreign proceeding also promotes fairness and litigation parity between the parties to the

foreign proceeding, avoiding one side, but not the other, being given multiple tries at cross-examining a witness.

This Court and others analyze <u>Intel</u>'s first factor based on whether the information sought is available in the foreign proceeding, without regard to whether the Section 1782 target is a "participant." <u>E.g.</u>, <u>In re Clerici</u>, 481 F.3d 1324, 1334 (11th Cir. 2007). For example, courts often deny Section 1782 petitions under <u>Intel</u> factor one where the evidence sought is in the possession of a party to the foreign proceeding, and thus available to the foreign tribunal, even though the Section 1782 target is not itself a participant in the foreign proceeding. <u>See, e.g.</u>, <u>Frasers Grp.</u>, 95 F.4th at 59; <u>SPS Corp I, Fundo de Investimento em Direitos Creditórios Não Padronizados v. Gen. Motors Co.</u>, 110 F.4th 586 (3d Cir. 2024); <u>Schmitz v. Bernstein Liebhard & Lifshitz, LLP</u>, 376 F.3d 79 (2d Cir. 2004).

If the District Court were correct that <u>Intel</u> factor one turned on whether the Section 1782 target is a participant in the foreign proceeding, and not whether the evidence sought is available in that proceeding, nearly every Section 1782 application seeking documents or deposition testimony from a third party would be granted. Among other things, the District Court's reasoning would require all third-party witnesses in foreign proceedings who reside in the United States to testify twice: once in a U.S.-style deposition, and again in the foreign proceeding. This would place U.S.-based companies at a significant disadvantage vis-à-vis

adversaries in foreign litigation. Foreign companies would generally be permitted to examine U.S.-based witnesses in advance of trial, but U.S. companies would generally not be able to take equivalent pre-trial testimony. This is error and in clear contravention of the purpose and language of Section 1782.

**III.** Regardless of which standard is applied, the District Court erred by granting the Section 1782 petition.

Under the correct <u>Intel</u> factor one standard—whether the evidence sought is available to the foreign tribunal—it was error to grant the Section 1782 petition. Mr. Guinan submitted a written undertaking through counsel to the District Court that he will submit a written witness statement to the Bermuda Court well in advance of trial. He will also testify and be subject to cross-examination in Bermuda. It is thus clear that the evidence sought by Petitioner, Mr. Guinan's testimony, is available to the Bermuda Court, and the first <u>Intel</u> factor therefore favors denying the Application.

Even under the standard espoused in the Orders—whether the Section 1782 target is a "participant" in the foreign proceeding—it was error to grant the Section 1782 Application. As a witness, Mr. Guinan is a participant in the Bermuda Proceedings who will submit a witness statement, testify at trial, and be subject to cross examination.

Courts often find the first <u>Intel</u> factor alone sufficient to deny a Section 1782 petition.  <u>See, e.g.</u>, <u>Pinchuk</u>, 2014 WL 1745047, at \*3; <u>In Matter of Application of Leret</u>, 51 F. Supp. 3d 66, 70–71 (D.D.C. 2014); <u>In re Zouzar Bouka; Vision Indian Ocean S.A.</u>, 637 F. Supp. 3d 74, 93 (S.D.N.Y. 2022).  Here, because the first <u>Intel</u> factor strongly favors denying the Application, the District Court erred by granting the Application.  The Court should reverse the District Court's judgment and deny the Application or, in the alternative, reverse and remand for further proceedings consistent with the correct <u>Intel</u> standard.

## STANDARD OF REVIEW

When "a district court's decision is based on an interpretation of law, [the] review is *de novo*."  <u>United Kingdom v. United States</u>, 238 F.3d 1312, 1319 n.8 (11th Cir. 2001) (citing <u>Sun America Corp. v. Sun Life Assur. Co.</u>, 77 F.3d 1325, 1333 (11th Cir. 1996)).  When appellants raise factual questions underlying a district court's grant of a Section 1782 petition, the standard of review is abuse of discretion.  <u>See</u> <u>Glock v. Glock, Inc.</u>, 797 F.3d 1002, 1005–06 (11th Cir. 2015).

## ARGUMENT

I. **A MAGISTRATE'S ORDER ON A SECTION 1782 APPLICATION MUST BE REVIEWED *DE NOVO*.**

A decision on a Section 1782 application is dispositive and therefore must be reserved to the judgment of an Article III judge.  Section 636 and Federal Rule of Civil Procedure 72 create a distinction between "nondispositive" pretrial motions

that may be referred to a magistrate judge for a decision and "dispositive motions" that may be referred only for evidentiary hearing or proposed "findings and recommendations" made to the district court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a)–(b)(1).  When a magistrate judge rules on a non-dispositive matter, a district judge may "reconsider" that ruling only if it is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); accord Fed. R. Civ. P. 72(a).  But when a magistrate judge issues a report and recommendation on a dispositive matter, and a party challenges that recommendation, a district judge must "make a *de novo* determination."  Id. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3).

Because Section 1782 is a summary discovery proceeding, a judge's determination of a Section 1782 petition denies or grants the ultimate relief sought and is dispositive.  CPC, 34 F.4th at 807; see also Intel, 542 U.S. at 247 (The purpose of 28 U.S.C. § 1782 is "to provide federal-court assistance in gathering evidence for use in foreign tribunals.").  *De novo* review is thus warranted.

The Court has made clear that "[t]he *de novo* review requirement is essential to the constitutionality of [S]ection 636" because it "[retains] in the Article III judge . . . the ultimate adjudicatory power."  Jeffrey S. v. State Bd. of Educ. of State of Ga., 896 F.2d 507, 512–13 (11th Cir. 1990) (quoting Hall v. Sharpe, 812 F.2d 644, 647 (11th Cir. 1987)); see also Williams v. McNeil, 557 F.3d 1287, 1291 (11th Cir. 2009) ("[T]he Article III judge must retain final decision-making authority.").  An

order must thus be reviewed *de novo* if it constitutes the "ultimate" adjudication of a case before the federal court, as opposed to a non-dispositive order dealing with a preliminary issue.

This Court has held in unpublished decisions that "Section 1782 motions are non-dispositive matters within the meaning of 28 U.S.C. § 636(b)(1)(A)" but has not analyzed the issue. See Rothe v. Aballi, 2021 WL 4429814, at *2; Pons v. AMKE Registered Agents, LLC, 835 F. App'x 465, 467 (11th Cir. 2020); Victoria, LLC v. Likhtenfeld, 791 F. App'x 810, 815 (11th Cir. 2019).[2]

Since the decisions in Rothe, Pons, and Victoria, the Second, Third, and Ninth Circuit Courts have directly addressed whether magistrate orders on Section 1782 applications are dispositive and have held that they are. They applied substantially the same test as this Court uses to determine if an order requires *de novo* review:

---

[2] The District Court relied on Weber v. Finker, 554 F.3d 1379 (11th Cir. 2009). The district court in Weber accepted the Magistrate Judge's report and recommendation granting a Section 1782 application. Id. at 1382. The petitioner then filed a motion to compel compliance. Id. The District Judge referred the motion to the Magistrate Judge and "authorized the Magistrate Judge to . . . enter an Order with the final decision on the scope of permissible discovery, which would be subject to review only if clearly erroneous or contrary to law." Id. The Court held that respondent had waived any objection to this referral by failing to object "at the time of reference." Id. Weber is completely inapposite here: there was no referral to the magistrate for a "final decision" to which Respondent could have objected; Respondent does not object to referral of the application to the Magistrate Judge in any event; and the issue at hand is whether the Magistrate Judge's opinion should be treated as a report and recommendation. And, indeed, the district court in Weber properly treated the Magistrate Judge's decision on the Section 1782 application itself as a report and recommendation.

whether the decision "effectively denies 'the ultimate relief sought' by a party or disposes of 'any claims or defenses.'" CPC, 34 F.4th at 807; see also Flam v. Flam, 788 F.3d 1043, 1046 (9th Cir. 2015) (noting similar tests in the Second and Third Circuits, as well as the Sixth, and Tenth); Vogel v. U.S. Office Prods. Co., 258 F.3d 509, 514–15 (6th Cir. 2001) ("Pretrial matters that a magistrate judge is precluded from 'determining' pursuant to § 636(b)(1)(A) are called 'dispositive' because they are 'dispositive of a claim or defense of a party.'"); First Union Mortg. Corp. v. Smith, 229 F.3d 992, 996 (10th Cir. 2000) (finding order dispositive because it was "dispositive of all the claims and defenses in the case [and] banishes the entire case from the federal court.").

In CPC, the petitioner filed a Section 1782 petition seeking documents for use in a potential patent infringement lawsuit in Germany. 34 F.4th at 804–05. The magistrate judge denied the petition. Id. at 805. CPC moved for *de novo* review of the magistrate judge's order by a district judge, but the district judge instead reviewed for clear error and upheld the magistrate's denial. Id. On appeal, the Ninth Circuit held that a magistrate judge's order on a Section 1782 application "rules on a 'dispositive matter' by denying 'the ultimate relief sought' in the federal case." Id. at 807 (quoting SEC v. CMKM Diamonds, Inc., 729 F.3d 1248, 1260 (9th Cir. 2013)). Because "[t]he district judge should have reviewed the magistrate judge's

findings *de novo*," id. at 805, the Ninth Circuit remanded with instructions to apply the correct standard of review, id. at 810.

Even more recently, the Second Circuit held that a "magistrate judge's order [on a Section 1782 application should] be treated as a report and recommendation." Associacao dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp., 2023 WL 3166357, at *1 (2d Cir. Mar. 28, 2023). After the Associacao decision, district courts in the Second Circuit have recognized that rulings on Section 1782 petitions are dispositive because "the entire purpose of a Section 1782 petition is to seek discovery, so that any decision regarding whether discovery may proceed is dispositive." BANOKA, S.a.r.l. v. Alvarez & Marsal Inc., 2024 WL 1242994, at *3 (S.D.N.Y. Mar. 22, 2024); see also In re Ibiuna Credito Gestao de Recursos Ltda., 2024 WL 1077559, at *2 n.2 (S.D.N.Y. Feb. 14, 2024), report and recommendation adopted sub nom. Ibiuna Credito Gestao de Recursos Ltda v. Goldman Sachs Group Inc., 2024 WL 1076940 (S.D.N.Y. Mar. 11, 2024).

The Third Circuit in Arcelik A.S. v. E.I. DuPont de Nemours & Co., similarly observed that a ruling on a Section 1782 application is dispositive because "once the court rules, that is the end of the involvement of the federal court system." 856 F. App'x 392, 396 (3d Cir. 2021). The court distinguished between decisions regarding letters of request that are non-dispositive because an underlying case will continue in the federal court system, and Section 1782 decisions, where "the only role of the

federal judiciary in the matter is to resolve the discovery question." Id. at 395–96. "Before a federal court receives the § 1782 assistance request . . . there is no case in federal court, no docket, no case number. And once the court rules, that is the end of the involvement of the federal court system." Id. at 396.

District courts in other Circuits have followed suit. The District Court for the Northern District of Illinois, for example, held that a "ruling granting [a Section 1782] application completely resolves [a petitioner's] case in federal court. It is thus properly considered dispositive." In re Abubakar, 696 F. Supp. 3d 479, 492 (N.D. Ill. 2023); see also Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3068.2 (3d ed. 2024) ("the sole purpose of the [Section 1782] proceeding is to obtain discovery, and accordingly a motion to compel such discovery is a final, dispositive matter").

Under the standard applied by the Eleventh Circuit and sister Circuits alike, a decision on a Section 1782 application is dispositive. It constitutes the ultimate adjudication of the case before the federal court because it grants or denies the ultimate relief sought. Such an order must be reserved to the judgment of an Article III judge and reviewed *de novo*.

This point is reinforced by courts' treatment of other, similar orders as dispositive, so long as they dispose of the case before the federal court, even if they leave substantive issues open for other tribunals to decide. An order enforcing or quashing an administrative subpoena, for example, is similar in all relevant ways to

an order granting or denying a Section 1782 application. Just like an order to grant or deny a Section 1782 petition, an order on an administrative subpoena grants or denies a party's request for discovery to use in a separate proceeding. See N.L.R.B. v. Frazier, 966 F.2d 812, 814–15 (3d Cir. 1992) (seeking testimony for use in proceedings in front of National Labor Relations Board). And just like an order on a Section 1782 petition, an order on an administrative subpoena fulfills "the only role of the federal judiciary in the matter . . . resolv[ing] the discovery question." Arcelik, 856 F. App'x at 396.

Courts consistently treat orders on administrative subpoenas as dispositive because they dispose of the case before the federal court.[3] The Third Circuit in NLRB v. Frazier, for example, held that a district court erred by treating as non-dispositive a magistrate's order on an administrative subpoena. 966 F.2d at 817. The Third Circuit acknowledged that a subpoena-related motion arising in a civil action would normally "be a routine matter which a magistrate judge could dispose of as a nondispositive motion." Id. An order on an administrative subpoena, though, differs in one conclusive way for purposes of Section 636. Id. Unlike a standard pretrial discovery dispute, a request to enforce an administrative subpoena is "not part of a larger case before the court." Id. Thus, even though a magistrate's order

[3] The Eleventh Circuit has not ruled whether administrative subpoenas are dispositive.

enforcing or quashing an administrative subpoena is "collateral to the [proceeding in which the evidence will be used]," the Third Circuit held it is dispositive because it "disposes of the entire case before it" and "seals with finality the district court proceeding." Id. at 817.

The Fourth, Fifth, and Eighth Circuits have likewise held that actions to enforce an administrative subpoena are dispositive because "there is no pending underlying action before the court." Equal Emp. Opportunity Comm'n v. BDO USA, LLP, 876 F.3d 690, 695 n.1 (5th Cir. 2017) (quoting E.E.O.C. v. Schwan's Home Service, 707 F. Supp. 2d 980, 987 (D. Minn. 2010)); United States v. Mueller, 930 F.2d 10, 12 (8th Cir. 1991) (holding that district court correctly "treated the magistrate judge's order [enforcing an FBI document summons] as a proposed order, [and] made a de novo determination" under Section 636); Aluminum Co. of Am., Badin Works v. U.S. Env't Prot. Agency, 663 F.2d 499, 501 (4th Cir. 1981) (holding that order on motion to quash EPA warrant was dispositive because "[t]he motion was not a 'pretrial matter' but set forth all of the relief requested.").

Courts in the Eleventh Circuit also treat as dispositive orders on administrative subpoenas because they "will end the proceeding in this Court" and "determine[] with finality the duties of the parties." N.L.R.B. v. Lear Renosol Selma Mfg. Facility, 2015 U.S. Dist. LEXIS 110755, at *2–4 (S.D. Ala. Aug. 21, 2015); see also N.L.R.B. v. Lear Corp. EEDS & Interiors, 2016 WL 3383284, at *3 n.6 (S.D. Ala.

June 17, 2016) ("Case law is in accord with [the] principle" that "enforcement of administrative subpoenas constitutes a dispositive matter for purposes of § 636(b)(1) review"). The view in the Eleventh Circuit is that, even though a motion to enforce a subpoena "might ordinarily be handled by a magistrate judge as a nondispositive matter," an order on an administrative subpoena is dispositive because "a proceeding [to enforce an administrative subpoena] does not occur during the discovery process of a civil case at large" but is instead "in essence a civil action unto itself." N.L.R.B. v. Durham Sch. Servs., L.P., 2014 WL 7662293, at *5 (N.D. Fla. Oct. 10, 2014), report and recommendation rejected in part on other grounds after _de novo_ review, 2015 WL 150898 (N.D. Fla. Jan. 12, 2015). "[O]nce the matter of the subpoena's enforcement is resolved, the action is concluded." Id.

In sum, orders enforcing or quashing administrative subpoenas are consistently treated as dispositive by federal courts nationwide because they dispose of the entire proceeding before the district court. Orders on Section 1782 applications are dispositive for the same reasons. They also "seal[] with finality the district court proceeding," N.L.R.B. v. Frazier, 966 F.2d at 818, and a proceeding to issue a Section 1782 subpoena is "in essence a civil action unto itself," Durham Sch. Servs., L.P., 2014 WL 7662293, at *5.

Section 1782 petitions are summary discovery proceedings. An order on such a petition constitutes the ultimate disposition of the case before the federal court and

is thus dispositive, and 28 U.S.C. § 636(b)(1)(C) therefore requires a District Court

judge to review an order on a Section 1782 application *de novo*.

## II. THE SECOND ORDER SHOULD BE REVERSED OR, IN THE ALTERNATIVE, REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH INTEL.

### A. Under the First Intel Factor, Courts Must Determine Whether the Evidence Sought Is Available in The Foreign Proceeding.

The Second Order should be vacated because the District Court misapplied

the Intel test.  See Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co., 828

F.3d 1331, 1334 (11th Cir. 2016) (vacating district court's order for applying

incorrect legal standard); see also Kearse v. Sec'y, Fla. Dep't. of Corrs., 669 F.3d

1197, 1198 (11th Cir. 2011) (same).

The Second Order frames the test to be applied under Intel factor one as

"whether [Appellant] is a participant in the Bermuda proceedings."  Second Order

at 4.  That is the wrong inquiry.  The correct inquiry is whether evidence sought

under § 1782 is available to the foreign tribunal, not whether the target of a Section

1782 application is a participant in the foreign proceeding.

In Intel, the Supreme Court noted four factors that bear on a court's exercise

of discretion in granting a Section 1782 application.  Intel, 542 U.S. at 264.  The

Court articulated the first factor, at issue here, as follows:

> [W]hen the person from whom discovery is sought is a
> participant in the foreign proceeding . . . the need for §
> 1782(a) aid generally is not as apparent as it ordinarily is

> when evidence is sough from a nonparticipant in the
> matter arising abroad. A foreign tribunal has jurisdiction
> over those appearing before it, and can itself order them to
> produce evidence . . . In contrast, nonparticipants in the
> foreign proceeding may be outside the foreign tribunal's
> jurisdictional reach; hence, their *evidence, available in the
> United States, may be unobtainable absent § 1782(a) aid*."

Id. (emphasis added). If the Section 1782 target is not a "participant" in a foreign proceeding, it may be less likely that the evidence sought is available to the foreign tribunal, but it does not resolve the question before the Court. In line with the purpose of Section 1782, which is to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, . . . cannot [themselves] obtain," id., at 262, the test is whether the "evidence, available in the United States" is "unobtainable absent § 1782(a) aid." Id.

As the Court has held, a Section 1782 target's status as a "participant" or "party" to a foreign proceeding and the availability of evidence are not coextensive. For example, in In re Clerici, 481 F.3d at 1334, the Court held that the first Intel factor favored the applicant even though the Section 1782 target was a party to the foreign proceeding. Id. at 1334–35. Other Circuit Courts likewise analyze the first Intel factor based on whether the information sought was available in the foreign proceeding, without regard to whether the Section 1782 target was a "participant." As the Third Circuit explains, "the focus of Intel's first factor is not simply whether the party from whom the discovery is sought is a participant in the foreign

proceeding." SPS Corp I, 110 F.4th at 592. Rather, the first Intel factor supports

denying Section 1782 discovery where the evidence sought "is obtainable [in the

foreign forum] without [Section 1782] aid." Id.

Similarly, the Second Circuit held in Frasers Grp. that, although the subpoena

target was not a participant to the foreign proceeding, the evidence sought was not

"unobtainable absent Section 1782(a) aid" because a party had represented it would

treat documents stored in the target's personal devices as within the party's

possession custody and control for purposes of the foreign proceeding. 95 F.4th at

59. The court accordingly found these representations "indicate[d] that [petitioner]

could obtain these documents in the English Proceedings." Id.

The Seventh Circuit has also affirmed the denial of deposition discovery under

Section 1782 where the target undertook to provide testimony in the foreign

proceeding. In re Application of Venequip, S.A. v. Caterpillar Inc., 83 F.4th 1048,

1056 (7th Cir. 2023). That is exactly what occurred here. The target's "commitment

to cooperate with the discovery process in the [foreign] court" tilted the first Intel

factor towards the respondent. Id.

District courts in this Circuit and others also recognize that the first Intel factor

turns on the availability of evidence sought in the foreign proceeding. See, e.g., In

re Jagodzinski, 2019 WL 1112389, at *5–6 (S.D. Fla. Jan. 15, 2019) report and

recommendation adopted, 2019 WL 2255564 (S.D. Fla. Apr. 8, 2019). ("While the

parties are not identical, it can be assumed that any information sought from these parties in [the foreign proceeding] would be identical to discovery produced by those named in [petitioner's] Section 1782 application.").  "The relevant inquiry is whether the evidence [sought] is available to the foreign tribunal," not who holds the evidence.  In re Microsoft Corp., 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006).

If the first Intel factor turned on whether the Section 1782 target is a participant in the foreign proceeding, and not whether the evidence sought is available in that proceeding, all third-party witnesses in foreign proceedings who reside in the United States would be required to testify twice: once in a U.S.-style deposition, and again in the foreign proceeding.  This interpretation of Section 1782 not only contravenes the statute's purpose, it would also place U.S.-based companies at a significant disadvantage vis-à-vis adversaries in foreign litigation.  Foreign companies would generally be permitted to examine U.S.-based witnesses in advance of trial, but U.S. companies would generally not be able to take equivalent pre-trial testimony.  It would also tilt the litigation playing field in the foreign proceeding by permitting one side to cross-examine witnesses multiple times.  This is inconsistent with Section 1782's intent, design and purpose.  Intel, 542 U.S. at 261 (parity concerns are "important as touchstones for a district court's exercise of discretion" when applying Section 1782).

In short, the "participant" test applied by the District Court is inconsistent with the purpose of Section 1782 and contrary to the weight of legal authority, and the Second Order should therefore be reversed.

**B.**     **Petitioner's Application for Section 1782 Deposition Testimony Should Be Denied Under Either Test.**

If the Court agrees with the Respondent on the above question, it can end its inquiry there and remand to the District Court for further proceedings. Should the Court wish to consider the merits, however, the merits require that Alpine's Application be denied.

Under either the correct "availability" test or the "participant" test applied by the District Court, the Application should have been denied, and the Second Order should be reversed. Courts regularly deny Section 1782 applications on the first Intel factor alone. See, e.g., Pinchuk, 2014 WL 1745047, at *2 ("The Discovery Subjects also seek to quash the deposition subpoena issued to Mr. Korf. In return, they have agreed to make him available as a witness at the LCIA proceedings. In so doing, the Discovery Subjects have alleviated any concern that Mr. Korf's testimony will be unavailable in the LCIA proceeding. This is sufficient to quash the deposition subpoena issued to Mr. Korf."); see also Leret, 51 F. Supp. 3d at 70–71 (denying petitioner's 1782 application "primarily on the first Intel factor"); In re Zouzar Bouka, 637 F. Supp. 3d at 93 (finding the first Intel factor "counsels heavily

against granting the [Section 1782] application" with respect to the respondents in the contemplated French proceedings).

Here, Mr. Guinan's testimony is available in the Bermuda Proceedings and thus not "unobtainable absent § 1782(a) aid." Intel, 542 U.S. at 264. And because he is a witness in the Bermuda Proceedings who will testify and be subject to cross-examination, Mr. Guinan is also a participant in those proceedings. See Leret, 51 F. Supp. 3d at 70–71. The first Intel factor therefore warrants denying Petitioner's Application.

### 1. Mr. Guinan's Testimony Is Available in The Bermuda Proceedings.

Applying the correct "availability" test under Intel, the Second Order should be reversed and the Application denied. The only remaining evidence sought in the Application—Mr. Guinan's direct testimony—is available in the Bermuda Proceedings. The Bermuda Court has ordered all proposed fact witnesses, including Mr. Guinan, to submit witness statements containing their evidence, and Mr. Guinan's written witness statement will likely be filed at least 10 months before trial. Dkt. 35-3 (Second Wasty Decl.) ¶ 6. Mr. Guinan will also provide oral testimony at trial, where Petitioner will have the opportunity to cross-examine him. Dkt. 35 (Respondent's Sur-Reply) at 7–8. The subject matter of the cross-examination will not be limited to the exact particulars of his witness statement; rather, Petitioner can question the witness on all matters deemed relevant by the Bermuda Court, thus

providing Petitioner a full opportunity to question Mr. Guinan. Petitioner has not demonstrated the evidence it seeks here is somehow unobtainable by the Bermuda Court, nor could it.

Pinchuk is illustrative. There, a district court in Florida denied deposition testimony sought through Section 1782 where the target "agreed to make [himself] available as a witness at the [foreign] proceedings." 2014 WL 1745047, at *2. The court concluded that this agreement "alleviate[ed] any concern that [the deposition target's] testimony will be unavailable in the [foreign] proceeding," and a deposition under Section 1782 was thus unwarranted. Id. The availability of a witness's testimony in a foreign proceeding was therefore "sufficient to quash the deposition subpoena." Id. As in Pinchuk, Mr. Guinan has indicated he will testify in the foreign proceeding. Respondent's Opposition at 2. The evidence Petitioner seeks is thus available in the Bermuda Proceedings, and the District Court erred in granting Petitioner's Section 1782 application.

The court in In re DNG FZE also relied on the first Intel factor to deny a Section 1782 deposition request of a third-party witness. 2024 WL 124694, at *5 (S.D.N.Y. Jan. 11, 2024). Because the deposition target was set "to testify as a key fact witness in [the foreign] proceeding," the court found he was "demonstrably a participant in [that] proceeding" and "the evidence sought (pretrial testimony from [the witness]) cannot be said to be 'outside the foreign tribunal's jurisdictional reach'

so as to support recourse to § 1782." Id. at *3. The court likewise found that in seeking to depose the Section 1782 target, the petitioner was "for all intents and purposes seek[ing] discovery from its opponent in the [foreign] litigation." Id. Mr. Guinan is also set to testify as a key fact witness in the Bermuda Proceedings, and the evidence sought, his testimony, is therefore not outside the foreign tribunal's reach.

The court in Jagodzinski denied a Section 1782 application seeking deposition testimony for similar reasons. 2019 WL 1112389, at *9. The court held that the first Intel factor favored denial even though the Section 1782 targets were not identical to the parties in the foreign proceeding because "it [could] be assumed that any information sought from [the] parties in [the foreign proceeding] would be identical to discovery produced by [the Section 1782 targets]." Id. at *6. So, too, here, the testimony Petitioner seeks is identical to that which will be produced in Mr. Guinan's written statement and at trial in the Bermuda Proceedings.

Leret also held that where a witness will testify in a foreign proceeding, the testimony is available in that proceeding and a Section 1782 application for the same evidence should be denied. See 51 F. Supp. 3d at 70–71. The court in Leret denied a petitioner's deposition request because the Section 1782 target had "offered to submit to [petitioner's] discovery requests in [the foreign proceeding]." Id. The court explained that "allowing a willing party to make himself available for

discovery requests in the country and court where the underlying legal disputes are being litigated was the most effective way to carry out the twin aims of [Section 1782]." Id. at 71.

In contrast, Respondent is not aware of a single decision not involving *pro-se* litigants in any jurisdiction in the United States in which a court has granted an application to depose a third-party individual witness who will testify in a foreign proceeding. The decision below is the first anywhere in the country to reach that conclusion.

Petitioner argued before the District Court that the evidence it seeks is not available in the Bermuda Proceedings because the written and trial testimony Mr. Guinan will give there is distinct from the deposition testimony Petitioner seeks through Section 1782. Courts have consistently rejected that form over substance approach in the context of Section 1782 applications, see, e.g., Pinchuk, 2014 WL 1745047, at *2, and with good reason. The form of evidence can and does vary across jurisdictions. The touchstone for courts adjudicating a Section 1782 application is whether the "***relevant information***" is available to foreign tribunals, Intel, 542 U.S. at 244, not the form in which it is available. Indeed, the Supreme Court was clear on this point: describing the key question as being whether "*evidence,* available in the United States, may be unobtainable absent § 1782(a) aid." Id. at 264 (emphasis added).

This distinction is particularly salient with respect to deposition discovery such as Petitioner seeks here. Most foreign jurisdictions do not allow pre-trial depositions. <u>See</u> Geoffrey C. Hazard Jr. & Michele Taruffo, <u>Transnational Rules of Civil Procedure Rules and Commentary</u>, 30 Cornell Int'l L.J. 493 (1997) (civil law tradition dispenses with "wide-ranging deposition taking before trial"). If Petitioner were correct that deposition testimony and trial testimony are distinct for purposes of Section 1782, that would support both non-party ***and*** party-witnesses in foreign proceedings being deposed in the United States, in addition to complying with the rules governing testimony in the jurisdiction of the underlying foreign proceeding. This would be a massive expansion of discovery permitted under Section 1782. Beyond the considerable burden this would put on witnesses, it would also turn the U.S. federal court system into a global discovery forum, resulting in a further uptick in Section 1782 applications. Yanbai Andrea Wang, <u>Exporting American Discovery</u>, 87 U. CHI. L. REV. 2089, 2111 (2020) (describing significant increase in Section 1782 discovery requests, which have quadrupled over the last 20 years).

Requiring all U.S.-based witnesses in foreign proceedings to testify both in the United States and in the foreign jurisdiction is not the law, and would be contrary to the purpose of Section 1782, which is to assist foreign tribunals in obtaining relevant evidence they themselves cannot obtain. <u>See</u> <u>Intel</u>, 542 U.S. at 262.

## 2. Mr. Guinan is a Participant in the Bermuda Proceedings.

The District Court did not use the correct test to evaluate the Application, see supra at 17–25, but even if Intel factor one was evaluated using the "participant" test, the District Court still erred in granting the Application because Mr. Guinan is participating the Bermuda Proceedings as a testifying witness. E.g., In re DNG FZE, 2024 WL 124694, at *3 (finding that the petitioner is "demonstrably a participant in the [foreign] proceeding" because "he is to testify as a key fact witness in that proceeding"); see also Pinchuk, 2014 WL 1745047, at *2 (concluding that respondent's voluntary agreement to testify in the foreign proceeding "alleviated any concern that [the respondent's] testimony will be unavailable in the [foreign] proceeding.").

Petitioner suggested before the District Court that Mr. Guinan may become unavailable. Dkt. 39 (Petitioner's Response to Objection) at 8. There is nothing in the record before the Court to suggest Mr. Guinan may be unavailable. Even if there was, the possibility that a witness may not be able to testify due, for example, to a catastrophic medical event, does not render them a "non-participant" and is not a basis to order Section 1782 relief. Were that the case, it would apply to all witnesses in foreign proceedings resident in the U.S., including party-affiliated witnesses. Any witness, regardless of party affiliation, is subject to vicissitudes that might render the witness unavailable, including, for example, switching jobs or becoming

incapacitated or seriously ill.  This is not, however, a basis for Section 1782 discovery and not at all what Section 1782 was designed to permit.  Dkt. 37 (Respondent's Objection) at 10.  A contrary ruling would require all U.S.-based witnesses to provide duplicative testimony, once in a U.S.-style deposition and again in the foreign proceeding, without providing any material assistance to foreign tribunals. See supra at 29.

In sum, the Bermuda Court has not asked for and does not need this Court's assistance:  Mr. Guinan will present his testimony directly to the Bermuda Court.

## CONCLUSION

For the foregoing reasons, this Court should reverse the Second Order and deny the Application or, in the alternative, reverse and remand for further proceedings.

 Dated:  September 23, 2024        Respectfully submitted,

                                            */s/ David Livshiz*
                                            David Livshiz

GREENBERG TRAURIG P.A.
David B. Weinstein (FBN 604410)
Brian C. Porter (FBN 0120282)
Greenberg Traurig, P.A.
101 E. Kennedy Blvd., Ste. 1900
Tampa, Florida 33602
Telephone: (813) 318-5700
weinsteind@gtlaw.com
brian.porter@gtlaw.com

Brigid F. Cech Samole
333 S.E. Second Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Brigid.CechSamole@gtlaw.com

FRESHFIELDS BRUCKHAUS
DERINGER US LLP
David Livshiz
Brandt Henslee
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: (212) 277-4000
david.livshiz@freshfields.com
brandt.henslee@freshfields.com

Jacob Johnston
700 13th Street, NW, 10th Floor
Washington, DC, 20005
Telephone: (202) 777-4554
jacob.johnston@freshfields.com

*Counsel for Respondent-Appellant Mark Guinan*

# CERTIFICATE OF COMPLIANCE

I certify that, pursuant to Federal Rules of Appellate Procedure 32(a)(5), (6), and (7)(B), the foregoing brief is proportionally spaced, has a typeface of 14 point, and contains 8835 words, excluding the parts of the brief exempted by Federal Rules of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4.

*/s/ David Livshiz*
David Livshiz

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2024, I caused this brief to be filed with the United States Court of Appeals for the Eleventh Circuit through the Court's CM/ECF system. Parties represented by registered CM/ECF users will be served by the CM/ECF system.

*/s/ David Livshiz*
David Livshiz